IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **Fresh & Easy, LLC,** | ) | Case No. 15-12220 (BLS) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| **Diana Chan,** | ) | Adv. No. 15-51897 (BLS) |
| | ) | |
| Plaintiff, | ) | Related to Adv. Docket Nos. 26, 27, |
| | ) | 34, 36, 38, 65, & 67 |
| v. | ) | |
| | ) | |
| **Fresh & Easy, LLC, YFE Holdings, Inc.,** | ) | |
| **and The Yucaipa Companies, LLC,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**OPINION[1]**

Before the Court is Fresh & Easy, LLC's (the "Debtor") motion to compel

arbitration (the "Motion") under the Federal Arbitration Act ("FAA").[2]  The Debtor

requests the Court to send the above-captioned matter to arbitration on an individual basis,

expunge Diana Chan's ("Ms. Chan" or the "Plaintiff") purported class claims, and stay this

adversary proceeding until completion of the arbitration.  Ms. Chan opposes the Motion on

the ground that the arbitration agreement between the parties is unenforceable under the

National Labor Relations Act, 29 U.S.C. § 151 *et seq.* (the "NLRA") because it contains a

class-action waiver provision.[3]

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law, as required by the Federal rules of Bankruptcy Procedure. Fed. R. Bankr. P. 7052, 9014(c).

[2] D.I. 26 & 27.

[3] D.I. 34 & 65.

This case presents two matters of first impression in this jurisdiction. The first issue is whether a class-action waiver provision in an arbitration agreement violates the NLRA. There is little consensus on this issue. It has received a great deal of attention in recent months, with two Courts of Appeal parting ways with the majority of courts that have previously considered the issue. The second issue before the Court is whether an arbitration agreement containing a provision that violates the NLRA remains enforceable if that agreement allows an employee to revoke it after following certain procedures.

As discussed in detail below, the Court concludes that a class-action waiver provision violates substantive rights at the heart of the NLRA. Further, the Court finds that the opt-out provision does not operate to save the Arbitration Agreement at issue here. The Debtor's Motion is denied.

## I.  BACKGROUND

On October 30, 2015, Fresh & Easy, LLC filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor operated a chain of grocery stores in the southwest United States. The Debtor's stores have all closed and substantially all of its assets have been sold during this bankruptcy proceeding.

Ms. Chan worked in the produce department at one of the Debtor's California distribution centers until her termination on October 30, 2015. On November 12, 2015, Ms. Chan commenced this adversary proceeding by filing a complaint[4] (the "Complaint") on behalf of herself and a purported class of similarly situated former employees against YFE Holdings, Inc., the Yucaipa Companies, LLC, and the Debtor (collectively, the "Defendants"). The Plaintiff requests this action proceed as a class action under Federal

---

[4] D.I. 1.

Rule of Bankruptcy Procedure 7023 ("Rule 23") and that she be designated as the class representative.

The Plaintiff's two-count Complaint seeks to recover damages on account of alleged violations of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2100-2109, and its California counterpart, California Labor Code §§ 1400-1408 (the "Claims"). The Plaintiff avers that the Defendants violated these statutes by failing to give her and other similarly situated employees at least sixty days advance notice of termination.[5] The Plaintiff asserts that the class of affected employees is thus entitled to sixty days wages and certain benefits under the Employee Retirement Income Security Act. The Plaintiff has filed the Complaint but has not filed a proof of claim in her individual capacity or a class proof of claim on behalf of similarly situated former employees of the Debtor.

Nearly two years before the Plaintiff's termination, on November 29, 2013, she entered into an arbitration agreement with the Debtor (the "Arbitration Agreement") that required her to resolve all employment-related disputes through arbitration.[6] The Arbitration Agreement further provided that the Plaintiff could revoke the agreement if within thirty days of signing the agreement she: (i) notified the Debtor in writing that she was revoking; (ii) signed the notice; and (iii) delivered the revocation notice to the Debtor's human resources department. The record reflects that she did not opt-out of the Arbitration Agreement.

---

[5] *See* 29 U.S.C. § 2102(a) ("An employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order to each representative of the affected employees as of the time of the notice . . . ."); Cal. Lab. Code § 1401(a)(1) (same).

[6] D.I. 28, Ex. A.

At the outset, the Arbitration Agreement states that the parties "agree that any and all disputes or claims arising out of or relating to the Company/Employee employment relationship, including its termination . . . shall be resolved by final and binding arbitration by a single neutral arbitrator." The agreement covered any dispute with the Debtor's employees, officers, directors, parents, subsidiaries, and affiliated entities. It also permitted Ms. Chan to bring claims only in her individual capacity (hereinafter, the "Class Waiver"): "THE PARTIES AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN THEIR RESPECTIVE INDIVIDUAL CAPACITIES AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, REPRESENTATIVE OR COLLECTIVE ACTION." In the event a provision in the agreement was held to be void, the Arbitration Agreement provided that the remainder of the contract would remain in full force and effect.

On January 25, 2016, the Debtor filed its Motion seeking to compel arbitration pursuant to the terms of the Arbitration Agreement and dismissal of the Plaintiff's class claims.[7] On February 8, 2016, the Plaintiff filed a memorandum of law in opposition to the Motion, and on February 16, 2016, the Debtor filed a reply.[8] While this briefing was underway, this Court ruled in a separate adversary proceeding in this case that it lacked discretion to deny enforcement of an identical arbitration agreement[9] under the rule stated in *Mintze v. Am. Gen. Fin. Serv.'s (In re Mintze)*, 434 F.3d 222 (3d Cir. 2006).[10]

---

[7] Regarding the latter request, there is no relief the Court can grant. Per review of the claims registry maintained by Epiq Bankruptcy Solutions LLC, the Plaintiff did not file a proof of claim in her individual capacity or a class proof of claim on behalf of similarly situated former employees of the Debtor. The Plaintiff's pleading also do not mention the filing of a proof of claim.

[8] D.I. 34 & 36.

[9] Except for the signature line and date, the arbitration agreements are the same. Adv. Proc. No. 15-51906, D.I. 27, Ex. A.

[10] Adv. Proc. No. 15-51906, D.I. 63. The Court did not consolidate the adversaries for purposes of disposition because of the different arguments presented by the plaintiffs.

Shortly after that decision was issued, the Court granted the Plaintiff's request to file supplemental briefing to address a recent decision by the United States Court of Appeals for the Seventh Circuit.[11]  The Plaintiff and the Debtor subsequently filed further briefing in support of their respective positions.[12]  This matter has been fully briefed and is ripe for decision.

## II.    JURISDICTION AND VENUE

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157(b)(1).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O).[13]

## III.    DISCUSSION

### A.    **The Parties' Positions**

The Debtor argues that the FAA requires enforcement of the Arbitration Agreement.  The Debtor posits that this Court lacks discretion to deny enforcement of the Arbitration Agreement under *Mintze* because there is no inherent conflict between arbitrating the Claims and the Bankruptcy Code's underlying purposes.

The Plaintiff suggests that the Court need not reach the question (central to the analysis under *Mintze*) of whether there is an inherent conflict because the Class Waiver renders the Arbitration Agreement unenforceable under the NLRA and the FAA's savings

---

[11] D.I. 64.

[12] D.I. 65 & 67.

[13] The question presented by the Motion is, in what forum will claims against this Debtor be adjudicated?  The Court determines that this is a question that invokes this Court's core jurisdiction.  The fact that Plaintiff has not filed a proof of claim is of limited significance here, given that Plaintiff has timely filed the Complaint, thereby invoking the Court's jurisdiction.  Pursuant to the Amending Standing Order of Reference dated _____, to the extent it is subsequently determined that the matter before this Court is non-core, a reviewing court may consider this Opinion as proposed findings of fact and conclusions of law under Fed. R. Bankr. P. 9033.

clause.[14]  Relying on the recent decision in *Lewis v. Epic Sys. Corp.,* 823 F.3d 1147 (7th Cir. 2016), the Plaintiff contends that Section 7 of the NLRA confers a substantive right for employees to pursue class actions because they constitute concerted activities, which are specifically protected under the NLRA.  Because Section 8 of the NLRA deems it an unfair labor practice to interfere with the exercise of rights guaranteed under Section 7, the Plaintiff contends that the Class Waiver violates the NRLA and renders the Arbitration Agreement unenforceable.

In response, the Debtor submits that the Seventh Circuit incorrectly held in *Lewis* that collective legal adjudication is a substantive right protected by the NLRA.  The Debtor relies largely on the reasoning embraced by the majority of courts that have considered the issue: those courts have concluded that class actions are a procedural tool and not a substantive right protected by the NLRA.  Consequently, Debtor contends that decisions by the National Labor Relations Board (the "Board") interpreting Section 7 to confer a substantive right are not entitled to deference.  Further, Debtor argues that the relief requested in its Motion is consistent with the Supreme Court's FAA jurisprudence, which has endorsed an expansive view in favor of arbitrating disputes.  Finally, the Debtor asserts that *Lewis* is materially distinguishable from this case:  unlike in *Lewis* -- where the arbitration agreement was a condition of continued employment -- the Arbitration Agreement at issue here contains an opt-out clause that enabled the Plaintiff to revoke it.

---

[14] The Plaintiff also challenges the applicability of the Arbitration Agreement on grounds that the Claims are not covered by that Agreement.  The Arbitration Agreement covers claims for wrongful termination, wages, penalties, and benefits.  D.I. 28, Ex. A.  The Plaintiff seeks damages for sixty days' wages and benefits, as well as civil penalties provided for under the WARN Act.  Thus, the Arbitration Agreement clearly covers the causes of action asserted in the Complaint.

**B.  Analysis**

The Plaintiff's challenge to the enforceability of the Arbitration Agreement raises two statutory interpretation issues.  First, whether the right to file a class action qualifies as "concerted activities" for "mutual aid or protection" under Section 7 of the NLRA.  29 U.S.C. § 157.  If it does, a class waiver infringes on a substantive federal right.  Because the Court holds that it does, the Court must address another interpretation question under Section 8 of the NLRA, which makes it "an unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Section 7."  29 U.S.C. § 158(a)(1).  The Court must decide whether an illegal contractual provision that may be revoked by the employee still interferes with, restrains, or coerces employees in the exercise of their Section 7 rights.  The Court addresses each issue in turn.

1.  **Section 7 Reflects the Unambiguous Intention of Congress to Create and Protect Employees' Right to Pursue Collective Legal Action**

The NLRA is not interpreted on a clean slate.  The Board has been delegated the power and responsibility to interpret the NLRA.  *NLRB v. City Disposal Sys. Inc.*, 465 U.S. 822, 829 (1984) ("[T]he task of defining the scope of § 7 is for the Board to perform in the first instance as it considers the wide variety of cases that come before it . . . .")(internal quotation marks omitted).  Because the Board is charged with administering the NLRA, a court cannot "simply impose its own construction of the statute."  *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843 (1984).  Supreme Court precedent teaches how courts should approach the Board's interpretation.  If Congress has directly spoken to the question at issue through the text of the statute, that is the end of inquiry as both the Board and a court must give effect to the intent of Congress.  *Id.*  But if Congress has not unambiguously expressed its intent, the question then is whether the

Board's "answer is based on a permissible construction of the statute." *Id.*  If the Board has

adopted a reasonable construction, it is "entitled to considerable deference."  *City Disposal*

*Sys.*, 465 U.S at 829; *see ABF Freight System, Inc. v. NLRB*, 510 U.S. 317, 324 (1994)

(observing that the Board's views regarding scope of the NLRA are entitled to "the greatest

deference").

Before reaching the question of whether the Board's interpretation is reasonable, the

Court must exhaust "the devices of judicial construction [that] have been tried and found to

yield no clear sense of congressional intent."  *Gen. Dynamics Land Sys., Inc. v. Cline*, 540

U.S. 581, 600 (2004).  The starting point in statutory interpretation always begins with the

language of the statute.  When a statute's language is plain, courts must enforce the statute

according to its plain meaning.  *E.g.*, *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004); *Griffin v.*

*Oceanic Contractors, Inc.,* 458 U.S. 564, 571 (1982).  If Congress has not defined a

particular term in the statute or elsewhere in the statutory scheme, a court must give that

term its ordinary and customary meaning.  *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd.*

*P'ship*, 507 U.S. 380, 388 (1993).

Section 7 sets forth the rights of employees under the NLRA.  It provides that

"[e]mployees shall have the right to self-organization, to form, join, or assist labor

organizations, to bargain collectively through representatives of their own choosing, and to

engage in other *concerted activities* for the purpose of collective bargaining or other

mutual aid or protection."  29 U.S.C. § 157 (emphasis added).  The term "concerted

activities" is not specifically identified in the NLRA.  According to the version of the

Oxford English Dictionary in print when Congress enacted the NLRA, "concerted" means

"arranged by mutual agreement; agreed upon, pre-arranged; planned, contrived; done in

concert;" and "concert" means an "agreement of two or more persons or parties in a plan, design, or enterprise; union formed by such mutual agreement." Oxford English Dictionary 764 (1st ed. 1933); *see Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2003 (2012) (commenting that the Oxford English Dictionary is "one of the most authoritative on the English language"); *Sanders v. Jackson*, 209 F.3d 998, 1000 (7th Cir. 2000) ("We frequently look to dictionaries to determine the plain meaning of words, and in particular we look at how a phrase was defined at the time the statute was drafted and enacted."). And the Oxford English Dictionary defines "activity" as "the state of being active; the exertion of energy, action." Oxford English Dictionary 95 (1st ed. 1933). The understanding and meaning of "concerted" remains unchanged today. The current edition of the Oxford American Dictionary defines "concerted" as "jointly arranged, planned, or carried out; coordinated." New Oxford American Dictionary 359 (3d ed. 2010). Finally, Black's Law Dictionary defines "concerted activity" as "action by employees concerning wages or working conditions; esp., a conscious commitment to a common scheme designed to achieve an objective." Black's Law Dictionary (10th ed. 2014.)

Synthesizing these authorities leads the Court to conclude that the ordinary meaning of "concerted activities" within the context of Section 7 protects a broad range of employee conduct.[15] Collective adjudication fits well within this protected range because at its core it is a planned arrangement among more than one employee for a particular work-related purpose. Other courts have similarly construed "concerted activities" as

---

[15] Admittedly, there is some breadth to the meaning of "concerted activities." Merely because a term is broad in scope, however, does not render it ambiguous. *See Penn. Dep't of Corrections v. Yeskey*, 524 U.S. 206, 212 (1998). By using intentionally broad language, Congress does not have to spell out every conceivable contingency. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 499 (1985) (describing how a statute which can be "applied in situations not expressly anticipated by Congress does not demonstrate ambiguity . . . . It demonstrates breadth"). *See also Haroco, Inc. v. American National Bank & Trust Co. of Chicago*, 747 F.2d 384, 389 (7th Cir. 1989) aff'd 473 U.S. 606 (1985).

encompassing collective adjudication. *Morris v. Ernst & Young, LLP*, No. 13-16599, 2016 WL 4433080, at *3 (9th Cir. Aug. 22, 2016); *Lewis*, 823 F.3d at 1153; *see Brady v. Nat'l Football League*, 644 F.3d 661, 673 (8th Cir. 2011) ("[A] lawsuit filed in good faith by a group of employees to achieve more favorable terms or conditions of employment is 'concerted activity' under § 7 of the National Labor Relations Act.").

    The purpose behind Section 7's enactment supports such a reading.  When interpreting a word in a statute, the whole statutory text and purpose must be considered. *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006).  A court should not be guided "by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Kelly v. Robinson*, 479 U.S. 36, 43 (1986).  The labor policy concerns at the time of the NLRA's enactment and the issues it was designed to address indicate that Section 7 protects the right of employees to act collectively to assert legal claims against an employer.  In *Eastex, Inc. v. NLRB*, the Supreme Court recognized this and remarked that Section 7 protects employees "when they seek to improve working conditions through resort to administrative and judicial forums."  437 U.S. 556, 566 (1978).  The Court reasoned that "Congress knew well enough that labor's cause often is advanced on fronts other than collective bargaining and grievance settlement within the immediate employment context." *Id.* at 565.  Likewise, in *NLRB v. City Disposal Sys. Inc.*, the Supreme Court observed the importance the NLRA placed on collective action against an employer: "It is evident that, in enacting § 7 of the NLRA, Congress sought generally to equalize the bargaining power of the employee with that of his employer by allowing employees to band together in confronting an employer regarding their terms and conditions of their employment."  465 U.S. 822, 835 (1984).  Congress gave no indication

that Section 7 was "intended to limit [Section 7] protection to situations in which an employee's activity and that of his fellow employees combine with one another in any particular way." *Id.*

Interpreting Section 7 to include collective-suit filing clearly furthers the policies underlying the NLRA.  Section 1 of the NLRA, which is captioned "Findings and declaration of policy," makes clear that the chief focus of the NLRA is to protect the right of employees to act collectively.  It provides, among other things, that the NLRA was enacted to provide "equality of bargaining power between employers and employees" and to "protect the exercise by workers of full freedom of association . . . for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection." 29 U.S.C. § 151.  Collective legal action balances the playing field by providing a feasible means for employees to assert rights where they would otherwise "have no realistic day in court if a class action were not available." *Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 809 (1985).  "Collective, representative, and class legal remedies allow employees to band together and thereby equalize bargaining power." *Lewis*, 823 F.3d at 1153.  Many of the chief benefits of proceeding as a class dovetail with the notion of equalizing the parties' disparate positions; for instance, proceeding as a class action may bolster employees' negotiating position, allows access to counsel that would not otherwise take the case given the amount of the individual claims, and helps ensure employers listen to its employees' allegations given the aggregate liability of the pooled claims.  Access to judicial fora is one of the recognized ways employees seek to improve terms and conditions of employment. *Eastex*, 437 U.S. at 566.  Requiring employees to bring claims individually frustrates the NLRA's goal of "protect[ing] the right of workers to act together

to better their working conditions." *NLRB v. Washington Aluminum Co.*, 370 U.S. 9, 14 (1962).

Accordingly, this Court concludes that Congress has spoken directly through enactment of the NLRA to create a substantive right for employees to proceed collectively to protect or vindicate rights conferred under Section 7.

### 2.  The Board's Interpretation of Section 7 is Entitled to Deference

Consideration of the Board's interpretation of Section 7 is not required here under *Chevron*, since the Court has concluded that the NLRA unambiguously protects the right of employees to bring a collective action.  It is, however, difficult to ignore the alternative interpretations other courts have adopted.  Reasonable minds appear to disagree on the meaning of "concerted activities."  *Compare Morris*, 2016 WL 4433080, at *3, *with D.R. Horton, Inc. v. NLRB*, 737 F.3d 344, 355 (5th Cir. 2013).  But even if this term is ambiguous and the Court resorts to the second step of the *Chevron* analysis, the Court's conclusion would remain unchanged.  The Board, on at least two occasions, has interpreted Section 7 to provide a substantive right to class or collective remedies.  *Murphy Oil USA, Inc.*, 361 NLRB No. 72, at *6-7 (2014) ("Murphy") *enf. denied* 808 F.3d 1013 (5th Cir. 2015); *D.R. Horton*, 357 NLRB No. 184, at *16 (2012) ("Horton") *enf. denied* 737 F.3d 344 (5th Cir. 2013) ("Horton II").  The Board's interpretation of Section 7 is rational and consistent with the NLRA's statutory scheme.  As such, its interpretation is entitled to considerable deference.  *Lechmere, Inc. v. NLRB*, 502 U.S. 527, 536 (1992).

The Debtor argues that the Board's rulings in *Horton* and *Murphy* are not entitled to deference because it construed and applied statutes beyond those that it administers. Indeed, the Board in both of those decisions interpreted statutes, and discussed precedent,

beyond its particular expertise.  And courts have correctly held that the Board should not be afforded *Chevron* deference when interpreting the FAA.  *See Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 297 n.8 (2d Cir. 2013); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1054 (8th Cir. 2013).  Similar to the Debtor's argument, these courts reason that no deference is owed because the Board does not have special competence or experience in interpreting the FAA.  This Court, however, is not relying on the Board's construction of the FAA, the interplay of the FAA and NLRA, its interpretation of Supreme Court precedent, or whether the FAA should yield to the NLRA.  Rather, the Court looks to the Board's interpretation only "on an issue that implicates its expertise in labor relations." *City Disposal*, 465 U.S. at 829 (1984).  The Court cannot disregard the Board's explicit determination that the NLRA grants employees a substantive right to adjudicate claims collectively.  The Court therefore finds that the Board is entitled to deference in its interpretation of Section 7.  *See Chevron*, 467 U.S. at 844 ("We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations.").

The remaining issues before the Court are largely resolved following the determination that Section 7 protects collective legal action.  As discussed in detail below, since Section 7 protects collective actions, it confers a substantive right to employees to engage in the same; Section 8 renders contractual provisions invalid that violate an employee's Section 7 rights.  Therefore, the Class Waiver is illegal and unenforceable pursuant to both the FAA's savings clause and well-settled case law holding that a party cannot give up the right to pursue statutory remedies by agreeing to arbitration.

### i.  <u>Section 7 confers a substantive right</u>

As stated above, the right of employees to utilize a collective mechanism is a substantive right protected under the NLRA.  The framework of the NLRA confirms this conclusion.  *Morris*, 2016 WL 4433080, at *8 ("Without § 7, the Act's entire structure and policy flounder."); *Lewis*, 823 F.3d at 1160 ("That Section 7's rights are 'substantive' is plain from the structure of the NLRA.").  Section 7 is the heart of the NLRA and establishes three rights—the right to organize, the right to bargain collectively, and the right to engage in other concerted activities.  These rights are the core substantive rights protected by the NLRA, *Morris*, 2016 WL 4433080, at *5, a conclusion buttressed the fact that Section 7 is the only substantive provision; the remaining provisions of the NLRA serve to protect the rights set forth in Section 7.  The ability to act collectively is the fundamental right of the NLRA and "guarantees employees the most basic rights of industrial self-determination."  *Emporium Capwell Co. v. Western Addition Community Org.*, 420 U.S. 50, 61 (1975).  Unlike procedural rights that concern "the manner and the means by which the litigants' rights are enforced," the right to pursue work-related legal claims on a collective or concerted basis is the very right created and protected under Section 7.  *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 407 (2010) (finding that substantive rules "alter the rights themselves, the available remedies, or the rules of decision by which the court adjudicates either").

The Debtor contends that the ability to participate in a class action lawsuit is only a procedural device.  Case law teaches that, depending upon the statutory scheme, the availability or use of class actions may be a procedural right and ancillary to the underlying substantive claim.  *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612-13

(1997); *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 332 (1980); *Reed v. Fla. Metro. Univ., Inc.*, 681 F.3d 630, 643 (5th Cir. 2012). The Debtor's reliance on this legal proposition and body of case law, however, is misplaced because prohibiting collective action here directly affects the substantive rights being adjudicated. *D.R. Horton*, 357 NLRB No. 184, at *12 ("Rule 23 may be a procedural rule, but the Section 7 right to act concertedly by invoking Rule 23 . . . or other legal procedurals is not.").

In this case, the Class Waiver wrongfully restricted the Plaintiff's Section 7 rights by only permitting her to bring claims in her individual capacity. The Plaintiff here seeks to assert an independent statutory right accorded by Congress—the right to proceed collectively.[16] Section 8(a)(1) renders the Class Waiver invalid because it violates Section 7; accordingly, the Class Waiver is unenforceable under the NLRA.[17]

### ii. The FAA's savings clause renders the Class Waiver unenforceable

The Debtor asserts that the FAA requires enforcement of the Class Waiver because arbitration agreements must be enforced as written. The FAA, however, does not enforce a provision that is illegal under another federal statute. The FAA's savings clause, found in Section 2 of the FAA, provides that valid written arbitration agreements shall be enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This section renders arbitration agreements invalid "by generally applicable contract defenses, such as fraud, duress, or unconscionability." *AT&T Mobility*

---

[16] Of course, Section 7 protects the right to *pursue* work-related legal claims as a class; it does not guarantee that the class will satisfy the strictures of Rule 23.
[17] As will be discussed below, the presence of an opt-out provision does not change the Court's conclusion that the Class Waiver is unenforceable.

*LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  Illegality is also among these contract

defenses.  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006).

The Class Waiver fits under the FAA's savings clause because it violates the

NLRA and is deemed illegal under Section 8(a)(1).  Importantly, the invalidity of the Class

Waiver is not predicated upon the fact that it is contained in an arbitration agreement.  The

illegality of the Class Waiver has nothing to do with the designation of arbitration as the

forum.  As the Ninth Circuit cogently described in *Morris*:

> It would equally violate the NLRA for [the employer] to require its
> employees to sign a contract requiring the resolution of all work-related
> disputes *in court* and in 'separate proceedings.'  The same infirmity would
> exist if the contract required disputes to be resolved through casting lots,
> coin toss, duel, trial by ordeal, or any other dispute resolution mechanism,
> if the contract (1) limited resolution to that mechanism and (2) required
> separate individual proceedings.

2016 WL 4433080, at *6 (emphasis in original).

The Debtor contends that refusing to enforce the Class Waiver runs afoul of

Supreme Court cases holding that arbitration agreements can require legal claims to be

adjudicated on an individual basis.  The issue the Court has with this argument, which is in

essence an iteration of the Fifth Circuit's reasoning in *Horton II*, is that "it is not clear to

[the Court] that the FAA has anything to do with this case."  *Lewis*, 823 F.3d at 1156.

The FAA reflects a "federal policy favoring arbitration agreements," *Moses H.*

*Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), and requires courts to

"rigorously enforce" them, *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985).

"Congress enacted the FAA in response to widespread judicial hostility to arbitration."

*American Express Co. v. Italian Colors Rest.*, 133 S.Ct. 2304, 2308-09 (2013).  One of the

purposes of the FAA is "to make arbitration agreements as enforceable as other contracts,

but not more so." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967); *see also Concepcion*, 563 U.S. at 339.

The FAA's mandate may be overridden if a party can demonstrate that "Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 227 (1987). Congressional intent to override the FAA can be deduced from the statute's text, the statute's legislative history, or from an inherent conflict between arbitration and the statute's underlying purposes. *Id.* But before reaching this conflicts question, which should not be reached lightly, the court must determine whether the "two statutes are capable of co-existence." *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 533 (1995). Courts have a duty to try and harmonize overlapping statutes to preserve the effect and purpose of each one. *F.C.C. v. NextWave Personal Commc'ns Inc.*, 537 U.S. 293, 304 (2003); *Morton v. Mancari*, 417 U.S. 535, 551 (1974) ("The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.").

Courts disagree on whether the FAA and NLRA conflict. *Compare Horton*, 737 F.3d at 359-60, *and Jasso v. Money Mart Exp., Inc.*, 879 F. Supp. 2d 1038, 1048 (N.D. Cal. 2012), *with Lewis*, 823 F.3d at 1157. If they conflict, then the Court must determine whether a contrary congressional demand exists and which statute must yield to the other. The Court does not need to make that determination. There is no conflict between the statutes because the FAA does not require enforcement of class waivers. *Morris*, 2016 WL 4433080, at *7; *Lewis*, 823 F.3d at 1157; Michael D. Schwartz, *A Substantive Right to*

*Class Proceedings: The False Conflict Between the FAA and NLRA*, 81 Fordham L. Rev.

2945, 2955 (2013).  The FAA's savings clause and the substantive nature of class actions

under Section 7 convince the Court that the NLRA and the FAA can coexist.

The FAA's savings clause prevents a conflict between the statutes.  *Morris*, 2016

WL 4433080, at *7; *Lewis*, 823 F.3d at 1157.  The FAA's savings clause places arbitration

agreements on equal footing as other contracts and subjects them to ordinary contract

defenses.  Section 2 demonstrates that the purpose of the FAA was not meant to make

arbitration agreements more enforceable than other contracts.  *Prima Paint*, 388 U.S. at

404 n.12.  The FAA does not elevate arbitration agreements and the rights conferred

thereunder on a pedestal "on which all other legal rights are to be sacrificed."  *Tigges v.*

*AM Pizza, Inc.*, No. CV 16-10136-WGY, 2016 WL 4076829, at *14 (D. Mass. July 29,

2016).  The FAA does not require the enforcement of illegal provisions and Section 2 of

the FAA excepts from the FAA's enforcement grasp those contracts where a valid contract

defense applies.  An illegal class waiver in an arbitration agreement fits squarely under the

ambit of Section 2.  Consequently, the FAA's savings clause operates to avoid any conflict

with the NLRA.  To find otherwise would render the FAA's savings clause a nullity, since

illegality is a generally applicable contract defense justifying revocation of the contract.

*Lewis*, 823 F.3d at 1159.

When analyzing whether the NLRA and FAA conflict, the distinction between a

substantive and procedural right is critical.  The Supreme Court's interpretation of the

FAA recognizes and appreciates this distinction; the Court has repeatedly found that the

FAA does not require enforcement of an arbitration agreement that waives a party's

substantive rights.  For example, in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,*

*Inc*, the Court concluded that "agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute." 473 U.S. 614, 627 (1985); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). Where an arbitration agreement contains a waiver of a party's substantive right, a court should "have little hesitation in condemning the agreement." *Id.* at 637 n.19. Similarly, in *American Express Co. v. Italian Colors Restaurant*, the Court explained that its decisions interpreting the FAA teach an important limiting principle "designed to safeguard federal rights: 'An arbitration clause will be enforced only 'so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum.'" 133 S. Ct. 2304, 2314 (2013) (quoting *Mitsubishi*, 473 U.S. at 637). Enforcing class waivers rings more than a dissonant chord with the NLRA: it directly conflicts with substantive rights under Section 7.

The Debtor mistakenly asserts that the Supreme Court's FAA jurisprudence dictates a contrary result. The Plaintiff relies on *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) and *DirecTV v. Imburgia*, 136 S. Ct. 463 (2015) for the proposition that agreements to arbitrate under the FAA can require legal claims to be adjudicated on an individual basis. In *Concepcion*, the issue before the Court was whether Section 2 of the FAA preempted California's judicial rule that deemed collective-arbitration waivers in consumer contracts unconscionable. 563 U.S. at 340. The Court held that the FAA preempted this rule because it disfavored arbitration and stood as an "obstacle to the accomplishment and execution of the full purposes and objectives" embodied in the FAA. *Id.* at 352. The California law, which basically required the availability of class arbitration, interfered with the fundamental attributes of arbitration; namely, facilitating streamlined proceedings and affording parties discretion in designating certain arbitration processes.

*Id.* at 345-46.  Contrary to *Concepcion*, the invalidation of class waivers pursuant to the NLRA does not rest on "defenses that apply only to arbitration."  *Id.* at 339; *see also Morris*, 2016 WL 4433080, at *6.  The NLRA has equal application outside of the arbitration context.  And therefore the NLRA does not have a "disproportionate impact on arbitration agreements" because it extends to all agreements involving an employer and employee relationship.  *Id.* at 343.

Regarding *Imburgia,* the Court finds it inapposite.  *Imburgia* was a contract interpretation case that involved determining whether an arbitration clause stating the "law of your state" included California law invalidating class arbitration waivers. *Imburgia*, 136 S. Ct. at 469-71.  Other than a few salutary comments regarding the Court's regard for the FAA, the Court's discussion focused on its interpretation of a contract.

It is unnecessary to determine whether a contrary congressional demand exists because the NLRA and the FAA do not conflict.  The FAA has never been held to deny a party a substantive right provided for under a federal statute.  *Lewis*, 823 F.3d at 1160.  And the statutes can be harmonized by application of the FAA's savings clause.  Thus, the Court holds that the Class Waiver is unenforceable under Section 7.[18]  The Court must still consider, however, whether the ability to revoke the Arbitration Agreement impacts the enforceability analysis.

### 3.    The Opt-Out Provision Does Not Revive the Class Waiver

---

[18] The Debtor stresses that its "position as a debtor in bankruptcy" is significant in determining whether Section 7 invalidates the Class Waiver.  The Court fails to see how the Debtor being in bankruptcy influences whether Section 7 protects the right of the Plaintiff to pursue a class action.  While it may be true that the class action vehicle is not favored as a procedural mechanism in bankruptcy, whether a procedural device is welcome or not has nothing to do with what substantive rights Section 7 of the NLRA confers on employees.

The Debtor contends that the Arbitration Agreement is distinguishable from *Lewis* and other cases similarly interpreting Section 7 because it contains an opt-out clause. Unlike *Lewis,* the Arbitration Agreement was not a condition of employment and the Plaintiff could have elected to revoke the agreement.  Relying on *Johnmohammadi v. Bloomingdales*, 755 F.3d 1072 (9th Cir. 2014), the Debtor argues that the Arbitration Agreement is enforceable because the opt-out clause demonstrates that the Debtor did not interfere with, restrain, or coerce the Plaintiff to agree to individual arbitration.

Without a reference to any Board decision or discussion of *Chevron* deference,[19] the Ninth Circuit in *Johnmohammadi* held that an arbitration agreement requiring individual arbitration is enforceable where the employee could opt-out of the agreement. 755 F.3d at 1077.  The court declined to determine whether a class waiver violated Section 7 and relied exclusively on Section 8.  The employer could not be held in violation of the NLRA, the court reasoned, because the employee effectively retained the right to file a class action and nothing prevented her from opting out of the arbitration agreement.  The court concluded that an employee who freely elects to resolve employment-related disputes through individual arbitration "cannot claim that enforcement of the agreement violates . . . the NLRA."  *Id.* at 1077.

While no other circuit courts have directly addressed this issue, the *Lewis* and *Morris* courts each touched upon the topic.  In *Lewis,* the court intimated that it disagreed with the holding in *Johnmohammadi*, observing that the *Johnmohammadi* decision "conflicts with a much earlier decision from this court [*NLRB v. Stone*, 125 F.2d 752 (7th Cir. 1942)], which had held that contracts between employers and individual employees

---

[19]  In *Johnmohammadi*, the Ninth Circuit did not have the benefit of the two Board decisions and the two Circuit opinions discussed below, as they were issued the following year.

that stipulate away Section 7 rights necessarily interfere with employees' exercise of those rights in violation of Section 8." *Lewis*, 823 F.3d at 1155; *see Stone*, 125 F.2d at 756 (holding that employees obligated to sign an arbitration agreement which infringes on Section 7 rights was a *per-se* violation of the NLRA)).  The court in *Lewis* also found that the employer acted "unlawfully *in attempting* to contract with [the employee] to waive his Section 7 rights, regardless of whether [the employee] agreed to that contract." *Lewis*, 823 F.3d at 1159 (emphasis added).  Similarly, the Ninth Circuit in *Morris* stated that "[p]reventing the exercise of a § 7 right strikes us as 'interference' within the meaning of § 8.  Thus, the Board's determination that a concerted action waiver violates § 8 is no surprise. And an employer violates § 8 a *second time* by conditioning employment on signing a concerted action waiver." *Morris*, 2016 WL 4433080, at *4 (emphasis added).

Importantly, the Board has recently addressed this issue.  *On Assignment Staffing Servs., Inc.*, 362 NLRB No. 189 (2015), *rev'd per curiam*, *On Assignment Staffing Servs., Inc. v. NLRB*, No. 15-60642, 2016 WL 3685206 (5th Cir. June 6, 2016); *24 Hour Fitness USA, Inc.*, 363 NLRB No. 84 (2015); *24 Hour Fitness USA, Inc. v. NLRB*, No. 16-60005, 2016 WL 3668038 (5th Cir. June 27, 2016).[20]  In *On Assignment Staffing Servs., Inc.*, the Board held that requiring employees to opt out of an arbitration agreement that otherwise waives the right to collective action interferes with an employee's exercise of rights provided under the NLRA.  362 NLRB No. 189, at *1.  The Board offered two distinct grounds for its holding.  First, requiring employees to affirmatively act by following

---

[20] The Board's decisions in *On Assignment Staffing* and *24 Hour Fitness* were summarily reversed by the Fifth Circuit with no discussion.  This is unsurprising given that the Fifth Circuit previously held that class waivers do not infringe on any Section 7 right.  *D.R. Horton*, 737 F.3d at 362.  As such, the presence of an opt-out clause in a contract containing a class waiver would be immaterial under the Fifth Circuit's precedent.

certain procedures to opt-out in order to retain the right to pursue collective legal action interferes with and burdens the exercise of Section 7 rights. *Id.* *6. Even though an opt-out provision allows employees to preserve their Section 7 rights, "Section 8(a)(1)'s reach is not limited to employer conduct that completely prevents the exercise of Section 7 rights. Instead, the long-established test is whether the employer's conduct *reasonably tends* to *interfere* with the free exercise of employee rights under the Act." *Id.* at *5 (emphasis in original). It burdens the exercise of Section 7 rights when an employer requires employees to take certain steps to retain the right to file pursue collective legal action. *Id.* at *6. The Board further reasoned that opt-out provisions impermissibly require employees to "make 'an observable choice that demonstrates their support for or rejection of'" pursuing collective-action claims under Section 7. *Id.* (quoting *Allegheny Ludlum Corp.*, 333 NLRB 734, 740 (2001), *enf'd*. 301 F.3d 167 (3d Cir. 2002)). Second, the Board concluded that employers cannot require employees to prospectively waive their Section 7 right to engage in concerted activity. *Id.* at *8. "Any binding agreement that precludes individual employees from pursuing protected concerted legal activity in the future amounts to a prospective waiver of Section 7 rights — rights that may not be traded away. . . and thus is contrary the Act." *Id.* at *8 (quoting *Mandel Security Bureau*, 202 NLRB 117, 119 (1973)).

The statutory text of Sections 7 and 8 controls the outcome of this issue. Under Section 8(a)(1), an employer commits an unfair labor practice when an employer interferes with, restrains, or coerces employees in the exercise of the rights guaranteed under Section 7. 29 U.S.C. § 158(a)(1). The Court has already determined that class waivers infringe on

Section 7 rights.  The question therefore becomes whether an employer can escape the jaws of the NLRA by giving its employees an option to revoke a class waiver.

Applying the same *Chevron* rubric as described above, the Court must first determine whether Congress has directly spoken on this issue.  *Chevron*, 467 U.S. at 843. Congressional intent is discerned from the statutory text.  *Lamie*, 540 U.S. at 534.  The operative words under Section 8 are "interfere with, restrain, and coerce."

The Court cannot say Section 8(a)(1) plainly renders invalid all class waivers when an employee can opt out.  *See PDK Labs. Inc. v. U.S. D.E.A.*, 362 F.3d 786, 796 (D.C. Cir. 2004) ("That a statute is susceptible of one construction does not render its meaning plain if it is also susceptible of another, plausible construction, as we believe this statute is."). There are no strings attached in an employee's decision to revoke the Arbitration Agreement.  The agreement here specifically notes that the employment terms would remain unchanged regardless of the employee's decision whether or not to opt out.  In choosing not to revoke the agreement, the employee, not the employer, is the party who elects to not exercise rights guaranteed under Section 7.  *See* 29 U.S.C. § 158(a)(1) ("It shall be an unfair labor practice for an *employer* . . . .") (emphasis added).  When an employee voluntarily enters into an arbitration agreement and is free to choose between these two options, and there are no consequences attached to either choice, Section 8(a)(1) can reasonably be construed against deeming this an unfair labor practice. *Johnmohammadi*, 755 F.3d at 1075-76.

The Court concludes that Section 8(a)(1) is susceptible to two plausible constructions, and we therefore turn to the second step of *Chevron.*  As noted, the Court

must defer to the Board's interpretation so long as it is rational and consistent with the NLRA.  *E.g.*, *Lechmere*, 502 U.S. at 536.

In *On Assignment Staffing,* the Board interpreted Section 8 and held that barring collective legal action "reasonably tends to interfere with the free exercise of employee rights under [the NLRA]."  362 NLRB No. 189, at *1.  The Board's interpretation of Section 8(a)(1) is reasonable and consistent with the NLRA's purpose.  *Tigges*, 2016 WL 4076829, at *15-16 (holding that Board interpreting Section 8 as prohibiting class action waivers even when there is a right to opt out as "eminently reasonable"); *see Lewis*, 823 F.3d at 1159 (finding that an employer that even attempts to contract with an employee to waive Section 7 rights is unlawful).  The Board relied on a substantial body of authority and thoroughly explained its position.  Important to the Court's decision to defer, however, was the Board's application of federal labor policy and drawing upon its body of experience.

The Board exists, at least in part, to redress the inequality of bargaining power between employers and their employees.  As one of its core functions, it is responsible for developing and applying national labor policy.  In *On Assignment Staffing*, the Board relied on its specialized experience and intimate understanding of the policies underpinning the NLRA.  362 NLRB No. 189.  For example, the Board observed that "to the extent that individual agreements limit the ability of workers to act collectively, such agreements detract from the 'full freedom of association' Congress deemed so essential to accomplishing the Act's stated objectives."  *Id.* at *9.  Opt-out mechanisms thwart the declared public policy of the NLRA by undercutting the ability of employees to exercise this sacrosanct right to freely associate.  *Id.*  Notably, the Board expressly rejected the

proposition that voluntary agreements should be enforced as written because it is contrary

with the "last eight decades of federal labor law and policy, which rejects the notion that

unrestrained 'freedom of contract' should govern the relationship between employers and

individual employees." *Id.* at \*11.

The Court finds no reason to disregard the Board's interpretation of Section 8(a)(1)

and will follow its interpretation. *Tigges*, 2016 WL 4076829, at \*15-16.  Therefore, the

fact that the Plaintiff was given an opportunity to opt out of the Arbitration Agreement

does not alter the Court's determination that the Class Waiver is unenforceable.[21] *Id.*, 2016

WL 4076829, at \*15-16; *On Assignment Staffing Servs., Inc.*, 362 NLRB No. 189, at \*8-

10; *24 Hour Fitness*, 363 NLRB No. 84.  With the Class Waiver held to be invalid, the

final question for the Court is whether the entire Arbitration Agreement is unenforceable

because it cannot be severed.

### C.  <u>The Class Waiver Cannot Be Severed</u>

When a provision in a contractual agreement is found to be illegal, a court has the

discretion either to excise the provision or refuse to enforce the entire agreement.  "In

exercising this discretion, courts look to whether the central purpose of the contract is

tainted with illegality or the illegality is collateral to [its] main purpose." *Pokorny v.*

*Quixtar, Inc.*, 601 F.3d 987, 1005 (9th Cir. 2010) (internal quotation marks omitted).

When evaluating whether severability is appropriate, both the First and Second

Restatements of Contracts consider whether the provision was an essential component of

---

[21] There is no need to address the Plaintiff's other argument that this Court should exercise its discretion and deny the Debtor's demand for compulsory arbitration under *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220 (1987) because there is an inherent conflict between arbitrating the Claims and the Bankruptcy Code's underlying purposes.  The Court's ruling on the Plaintiff's NLRA argument gets her to the same place.

the agreement.  Restatement (First) of Contracts § 603 (1932); Restatement (Second) of

Contracts § 184 (1979).  "If the central purpose of the contract is tainted with illegality,

then the contract as a whole cannot be enforced.  If the illegality is collateral to the main

purpose of the contract, and the illegal provision can be extirpated from the contract by

means of severance or restriction, then such severance and restriction are appropriate."

*Newton v. Am. Debt Servs., Inc.*, 854 F. Supp. 2d 712, 728–29 (N.D. Cal. 2012), *aff'd*, 549

F. App'x 692 (9th Cir. 2013).

Applying these principles, the Court finds that the Class Waiver cannot be severed

because it was central to the parties' agreement.  While the Arbitration Agreement does

contain a savings clause that provides that the remaining agreement shall remain in force if

any provision is held to be unenforceable, such a provision does not override the Court's

discretion, especially where an essential piece of the overall contract is illegal.  The

primary purpose of the agreement appears to be two-fold: (i) all employment-related

disputes must go to arbitration; and (ii) claims against the Debtor must be brought in the

employees' individual capacities.  The language of the Arbitration Agreement supports this

reading.  The Class Waiver provision is one of three sentences, out of the entire arbitration

agreement, that is in bold and all capitals.  Furthermore, the allocation of costs in the

agreement are primarily placed on the Debtor.  Allowing class arbitration to proceed would

substantially change the cost-allocation contemplated by the Arbitration Agreement.

The Court's discretion is also guided by the fact that excising the Class Waiver and

compelling arbitration would effectively be requiring class arbitration.  Such a requirement

fundamentally alters the agreed upon terms.  Class arbitration is discernably different than

bilateral arbitration.  *Concepcion*, 563 U.S. at 348-50 (noting that the switch from bilateral

to class arbitration makes the process slower, more costly, and increases procedural formality and the risks to defendants).  Notably, the Arbitration Agreement does not provide a specific saving mechanism in the event the Class Waiver is held unenforceable. *See generally Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 271 (3d Cir. 2003).  Without contractual language that the parties would agree to class arbitration in the event the Class Waiver was held invalid, the Court will not require the Debtor to proceed to class arbitration.  "[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so."  *Stolt-Nielsen*, 559 U.S. at 684 (emphasis in original).  Thus, the Class Waiver cannot be severed because the agreement does not indicate the parties intended to be bound by class arbitration.  *Id.* at 685 (holding that parties cannot be presumed to consent to class arbitration for "simply agreeing to submit their disputes" to arbitration).

## IV.    CONCLUSION

For all these reasons, the Motion to Compel Arbitration is DENIED.  An appropriate Order will issue.

**BY THE COURT**:

Dated: October 11, 2016
Wilmington, Delaware

_____
Brendan Linehan Shannon
Chief United States Bankruptcy Judge

## COUNSEL OF RECORD

Rosemary J. Piergiovanni, Esquire
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, DE  19801

    and

Eduard Korsinsky, Esquire
Christopher J. Kupka, Esquire
Michael B. Ershowsky, Esquire
Levi & Korsinksy LLP
30 Broad, 24th Floor
New Yor, NY  10004

*Attorneys for Plaintiff*

Norman L. Pernick, Esquire
Cole Schotz P.C.
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801

    and

Michael L. Gallion, Esquire
David Van Pelt, Esquire
Kelley Drye & Warren LLP
10100 Santa Monica Boulevard
23rd Floor
Los Angeles, CA  90067

*Attorneys for Defendant Fresh & Easy, LLC*